# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DOUGLAS G. GRAY, et al., <br> Plaintiffs, <br><br> v. <br><br> KRISTINE BEN, et al., <br> Defendants. | CV 22-03090 DSF (PVCx) <br><br> Order DENYING Motion to Remand (Dkt. 16) |

Plaintiffs Douglas G. Gray and Arlene Gray move to remand this action to Los Angeles County Superior Court. Dkt. 16 (Mot.). Defendants, JPMorgan Chase Bank, N.A. and Kristine Ben oppose. Dkt. 17 (Opp'n.). The Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78; Local Rule 7-15. For the reasons stated below, the Grays' motion is DENIED.

## I. BACKGROUND

On March 11, 2022, the Grays filed their first amended complaint in Los Angeles Superior Court, bringing claims against Ben and Chase for negligence under California law and elder financial abuse pursuant to Cal. Welf. & Inst. Code §§ 15610.30 and 15657.5. Dkt. 1, Ex. A, CM/ECF page ID 26 et seq.[1] (FAC) ¶¶ 30-38.

The Grays allege they were victims of a wire fraud scam. Id. ¶¶ 11-23. On November 30, 2020, an individual who identified himself as Jonathan from Amazon contacted Mrs. Gray by telephone informing her that a fraudulent charge of $349.99 had been made to her Amazon

---

[1] In future, exhibits to notices of removal should be separately linked.

account and that Amazon intended to refund that amount. Id. ¶ 11. The individual gained remote access to Mrs. Gray's computer so she could observe him filling out a refund form. Id. ¶ 12. The individual stated that he erroneously processed a refund of $35,000 to her Chase checking account. Id. ¶¶ 12-13. Mrs. Gray then received instructions to wire funds to the Bangkok Bank in Thailand in order to "correct the mistake." Id. ¶¶ 13-14.

On November 30, Mrs. Gray wire transferred $34,650 to Bangkok Bank from the Chase branch in Woodland Hills. Id. ¶ 15. On December 3, after receiving another telephone call, Mrs. Gray wire transferred $35,000 to Bangkok Bank from Chase's West Hills branch. Id. ¶¶ 18-21. On December 4, Mrs. Gray visited Chase's Woodland Hills branch to relay her suspicions about the wire transfers. Id. ¶¶ 23-25. She was informed that it was an "elder scam." Id. ¶ 25. On December 5, the Grays returned to the Woodland Hills branch and met with Ben to discuss how to respond to the theft. Id. ¶ 26.

The Grays allege that Defendants failed to make reasonable inquiries of Mrs. Gray prior to her authorizing the wire transfer to Bangkok Bank, failed to train their employees, and failed to implement policies and procedures that would have prevented Mrs. Gray from authorizing the wire transfer or assisted in recovering the funds after the wire transfer was executed. Mot. at 3.

## II. LEGAL STANDARD

### A. Removal

"Federal courts are courts of limited jurisdiction" and "possess only that power authorized by [the] Constitution and statute . . . ." Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). A defendant may remove an action to federal court if the federal court could exercise subject matter jurisdiction over the action. 28 U.S.C. § 1441(a).

"The removal statute is strictly construed against removal jurisdiction" and "[t]he defendant bears the burden of establishing that

removal is proper." Provincial Gov't of Marinduque v. Placer Dome, Inc., 582 F.3d 1083, 1087 (9th Cir. 2009). If a defendant fails to meet its burden of establishing the Court has subject matter jurisdiction, the suit is remanded. 28 U.S.C. § 1447(c). Generally, doubts as to removability are resolved in favor of remanding the case. See Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108-109 (1941); Gaus v. Miles, Inc., 980 F.2d 564, 566 (9th Cir. 1992).

### B. Edge Act

The Edge Act provides in part:

> [A]ll suits of a civil nature . . . to which any corporation organized under the laws of the United States shall be a party, arising out of transactions involving international or foreign banking . . . or out of other international or foreign financial operations . . . shall be deemed to arise under the laws of the United States, and the district courts of the United States shall have original jurisdiction of all such suits; and any defendant in any such suit may, at any time before the trial thereof, remove such suits from a State court into the district court of the United States for the proper district by following the procedure for the removal of causes otherwise provided by law.

12 U.S.C. § 632; see also Am. Int'l Grp., Inc. v. Bank of Am. Corp., 712 F.3d 775, 780 (2d Cir. 2013) (indicating that in order to qualify for removal to federal court, the suit must be civil in nature, one of the parties to the suit must be a corporation organized under the laws of the United States, and the suit must arise out of a transaction involving international or foreign banking or financial operations).

But jurisdiction under the Act does not exist "merely because there was a federally chartered bank involved, there were banking-related activities, and there were foreign parties." Pinto v. Bank One Corp., No. 02 Civ.8477 NRB, 2003 WL 21297300, at *3 (S.D.N.Y. June 4, 2003) (citation omitted). "Rather, a Court should satisfy itself that the suit arises out of an international or foreign transaction which falls

3

within the realm of those 'characterized as traditional banking activities.'" Id. (citation omitted).

### III. DISCUSSION

Defendants assert that this Court has original jurisdiction pursuant to the Act.  Dkt. 1 at 1.  Defendants assert that this action "is of a civil nature," "Chase is a national bank organized under the laws of the United States," and the action "arises out of two alleged wire transfers made by Plaintiffs to . . . banks in Thailand." Id. at 1-2.  The Grays do not dispute that this is a civil action and Chase is a national bank organized under the laws of the United States.  The issue is whether the suit arises out of transactions involving international or foreign banking or financial operations for purposes of the Act.  See Wilson v. Dantas, 746 F.3d 530, 535 (2d Cir. 2014).  The Ninth Circuit has not opined on the standard for determining when an action arises out of transactions involving international banking.[2]  Defendants argue that this Court should construe the provision broadly because multiple

---

[2] The Ninth Circuit has determined that another paragraph of section 632, which grants original jurisdiction in federal court for cases involving a federal reserve bank, "is written in the broadest possible language" and signals Congress's "strong" and "unequivocal" intent to provide a federal forum for those entities.  See City & Cnty. of San Francisco v. Assessment Appeals Bd., 122 F.3d 1274, 1276 (9th Cir. 1997).  But district courts in California have questioned whether the court's analysis applies beyond the paragraph regarding federal reserve banks.  See, e.g., Kim v. Wells Fargo, N.A., No. 21-cv-05405-JD, 2021 WL 5996486, at *2 (N.D. Cal. Dec. 20, 2021) (noting that the section specific to federal reserve banks "does not contain the qualifier applicable here that the lawsuit must arise out of a transaction involving international or foreign banking" and finding the court's analysis nonbinding); Bortz v. JP Morgan Chase Bank, N.A., No. 21-cv-0618-BAS-JLB, 2021 WL 8450484, at *3 n.2 (S.D. Cal. Aug. 10, 2021) (finding the Ninth Circuit's holding "to be limited to federal reserve banks" and "not applicable to the facts here"); People v. Wells Fargo & Co., No. CV 15-4181-GW(FFMx), 2015 WL 4886391, at *6 (C.D. Cal. Aug. 13, 2015).

courts have done so and a "broad construction is consistent with the overall purpose of the Edge Act." Id. at 12.

The scope of the Edge Act's jurisdictional grant is not clearly defined. Am. Int'l Grp., Inc., 712 F.3d at 780 ("The statute is somewhat confusingly drafted and perhaps ambiguous."). Courts are split on whether the Act should be interpreted as providing a broad basis for federal jurisdiction or read more narrowly. Ritchie Cap. Mgmt. LLC v. JP Morgan Chase & Co., 960 F.3d 1037, 1047 (8th Cir. 2020) (citing Sollitt v. KeyCorp, 463 F. App'x 471, 473-74 (6th Cir. 2012)).

Some courts have taken the broad view that "a transaction between an Edge Act bank and a foreign counterparty is sufficient to establish an international nexus." Eddystone Rail Co., LLC v. Bank of America, N.A., 482 F. Supp. 3d 123, 128-29 (S.D.N.Y. 2020) (discussing holdings in numerous district court cases); see also Pinto v. Bank One Corp., No. 02 Civ. 8477 NRB, 2003 WL 21297300, at *5 (SDNY June 4, 2003) (holding that the Act granted federal jurisdiction where internet gambling transactions involved a domestic credit card-issuing bank and foreign merchant banks). Sending payments to a foreign bank account has been found to qualify as a "transaction involving international banking." In re Citibank Aug. 11, 2020 Wire Transfers, 520 F. Supp. 3d 390, 412 (S.D.N.Y. 2021).

Other courts have criticized this approach on the grounds that interpreting the Act broadly "would lead to absurd results" and is inconsistent with the principle that statutes affording removal should be strictly construed. People v. Wells Fargo & Co., No. CV 15-4181-GW(FFMx), 2015 WL 4886391, at *6 (C.D. Cal. Aug. 13, 2015); Bortz v. JP Morgan Chase Bank, N.A., No. 21-cv-0618-BAS-JLB, 2021 WL 8450484, at *3 (S.D. Cal. Aug. 10, 2021); see Sollitt v. KeyCorp, 463 Fed. App'x. 471, 473-74 (6th Cir. 2012) (noting that some courts have held that the jurisdictional requirements of section 632 are met "if *any part of it* arises out of transactions involving international or foreign banking" but refusing "to subscribe to such an inherently limitless view") (emphasis in original). Some courts have interpreted the Edge Act narrowly, finding that claims do not arise out of transactions

5

involving international banking where the international nature of the transaction is incidental, irrelevant, or otherwise legally insignificant to plaintiffs' claims.  See Sollitt, 463 Fed. App'x. at 474-75; Wells Fargo, 2015 WL 4886391, at *5; Weiss v. Hager, No. 11 CV 2740 (VB), 2011 WL 6425542, at *3 (S.D.N.Y. Dec. 19, 2011).

The Grays contend that the Edge Act does not confer federal jurisdiction in this case because "Defendants' potential liability does not arise from the foreign aspect of the wire transfers, but rather from Defendants' failures that occurred prior to and unconnected thereto." Mot. at 4.  They argue that the traditional banking activity of transferring funds through wire transfer is irrelevant to Defendants' liability for negligence and elder financial abuse.  Id.  The Grays argue that the "international aspect of the wire transfer does not establish an essential element of the state claims for negligence or elder abuse."  Id. (citing Telecredit Serv. Ctr. v. First Nat. Bank of the Fla. Keys, 679 F. Supp. 1101 (S.D. Fla. 1988)).

The Court disagrees with the Grays' assertions that Defendants' potential liability arises from failures unconnected to the wire transfers, and that transferring funds through wire transfer is irrelevant to Defendants' liability.  The alleged failures that give rise to potential liability stem directly from Defendants' processing the wire transfers authorized by Mrs. Gray without inquiring about their purpose, and Defendants' response after learning that the wire transfers were part of a scam.  See FAC ¶¶ 30-31.  The Grays' negligence claim is based on alleged failures in policies and procedures that would have prevented them from suffering losses resulting from the wire transfers.  Id.  Defendants' potential liability arises from the fact that they processed "the wire transfers from Mrs. Gray's checking account to Bankok Bank" and in doing so "failed to use reasonable care to prevent plaintiffs from suffering loss or harm."  Id. ¶ 30.  And the elder financial abuse claim alleges that Defendants knowingly assisted in or facilitated the fraudulent taking of their funds – by processing the wire transfers and failing to implement and utilize procedures in connection with the wire transfers.  Id. ¶¶ 33-35.

The Grays refer to the "Bangkok Bank." Id. ¶¶ 19, 30. They state that the recipient bank is located in Thailand and allege that Mr. Gray asked Ben to contact the recipient bank, but she refused. Id. ¶ 27. Their negligence claim is based in part on Defendants' alleged failure "to comply with the recall procedures of the international messaging network known as the Society for Worldwide Interbank Financial Telecommunications ('SWIFT'), and the SWIFT Global Payments Innovation 'SWIFT gpi.'" FAC ¶ 31. The Grays' claims clearly focus on the authorization and approval of two international wire transfers. FAC ¶¶ 30-38. Wire transfers are clearly traditional banking activities.

Federal courts have a strict duty to exercise the jurisdiction conferred on them by Congress. City & Cnty. of San Francisco v. Assessment Appeals Bd., 122 F.3d 1274, 1276 (9th Cir. 1997) (citing Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 716 (1996)). The Edge Act provides a broad grant of jurisdiction, allowing defendants to remove suits "at any time before [] trial." See 12 U.S.C. § 632. The Court finds this action arises out of transactions involving international or foreign banking. The Court concludes that Defendants have met their burden to show that the Edge Act confers federal jurisdiction over this suit and DENIES the Grays' motion to remand. Because the Court has jurisdiction under the Edge Act, it does not address Defendants' arguments regarding diversity jurisdiction.

## IV. CONCLUSION

The Grays' motion to remand is DENIED.

IT IS SO ORDERED.

Date: August 31, 2022

                                                  Dale S. Fischer
                                                  United States District Judge