**MARK E. OVERLAND (State Bar No. 038375)**
**COURTNEY OVERLAND (State Bar No. 289666)**
**LAW OFFICES OF OVERLAND & OVERLAND**
100 Wilshire Blvd., Ste. 700
Santa Monica, CA  90401
Telephone:   (310) 459-2830
Facsimile:    (310) 459-4621
Email:        mark@overlaw.net,
              courtney@overlaw.net

**Attorneys for Plaintiffs**
DOUGLAS G. GRAY
ARLENE GRAY

### UNITED STATES DISTRICT COURT

### FOR THE CENTRAL DISTRICT

| | |
|---|---|
| DOUGLAS G. GRAY, an Individual, and ARLENE GRAY, an Individual,<br><br>Plaintiffs,<br><br>v.<br><br>KRISTINE BEN, an Individual, and JPMORGAN CHASE BANK, N.A., a Corporation,<br><br>Defendants.<br>_____ | Case No. **2:22−cv−03090 DSF (PVCx)**<br><br>**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SECOND AMENDED COMPLAINT; DECLARATION; EXHIBITS.**<br><br>**[FRCP 12(b)(6)]**<br><br>**Hearing Date: March 6, 2023**<br>**Action Filed: December 17, 2021**<br>**Removal Date: May 6, 2022**<br>**Trial Date: December 12, 2023** |

**TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:**

Plaintiffs DOUGLAS G. GRAY and ARLENE GRAY ("PLAINTIFFS") submit this Opposition to Defendants' Motion to Dismiss the Second Amended Complaint ("Motion"), [Dkt. #41], filed on January 17, 2023.

# **TABLE OF CONTENTS**

Page

I. **BASED ON ESTABLISHED PRINCIPLES OF STATUTORY CONSTRUCTION, CALIFORNIA JUDICIAL COUNCIL APPROVED JURY INSTRUCTIONS, RELEVANT RULINGS BY CALIFORNIA SUPERIOR COURT JUDGES, AND LEGISLATIVE HISTORY OF THE ELDER FINANCIAL ABUSE STATUTE, WELF. & INST. CODE §15610.30 DOES NOT REQUIRE ACTUAL KNOWLEDGE OF THE UNDERLYING FINANCIAL FRAUD IN ORDER TO ESTABLISH LIABILITY**...................................................................................6

   A. **The 2009 Amendment to the Elder Financial Abuse Statute**........................6

      1. **The Purpose of the Elder Financial Abuse Statute**..................6

      2. **Established Principles of Statutory Interpretation**....................7

      3. **California Judicial Council Approved Jury Instructions And Relevant Rulings By California Superior Court Judges**............................9

        a. **CACI 3100**........................................................9

        b. **Relevant Rulings by Superior Court Judges**............................9

      4. **_Das v. Bank of America, N.A._, 186 Cal.App.4th 727 (2010) and _Bortz v. JPMorgan Chase Bank, N.A._, 2021 WL 4819575 (S.D. Ca. Oct. 15, 2021) are Unreliable Precedent**.......................10

        a. **Aiding and Abetting**....................................................11

        b. **Assist**..............................................................11

II. **CHASE BANK WAS NEGLIGENT IN FAILING TO MAKE A REASONABLE INQUIRY OF MRS. GRAY PRIOR TO AUTHORIZING AND PROCESSING THE WIRE TRANSFER REQUESTS**.................12

   A. **Summary of Relevant Facts**..................................................12

   B. **Applicable Legal Principles**................................................13

      1. **CHASE Has A State Statutory Duty Of Care To Elders Like Plaintiffs, To Protect Them From Elder Financial Abuse**.............................17

2.   **CHASE's Duty To Report Suspicious Activity Is Relevant To Its State Statutory Duty Of Care**……………………………………………………… 17

3.    **The Agreement Is An Unenforceable Illusory And Adhesion Contract**..18

4.   **Mr. GRAY And Mrs. GRAY Did Not Assent To The Terms Of The Deposit Agreement**……………………………………………………………18

III.   **CONCLUSION**……………………………………………………………...........19

PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS SAC

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Asmus v. Pacific Bell*, 23 Cal.4th 1 (2000)……………………………………………..18

*Bortz v. JPMorgan Chase Bank, N.A.,* 2021 WL 4819575 (S.D. Ca. Oct. 15, 2021)..9, 16

*Bounds v. Superior Court*, 229 Cal.App.4th 468, 478 (2014)………………………...5, 7

*Das v. Bank of America, N.A.,* 186 Cal.App.4th 727 (2010)……………………………9

*Gutierrez v. Carmax Auto Superstores California*, 19 Cal.App.5th 1234 (2018)……….6

*Kesner v. Superior Court,* 1 Cal.5th 1132 at 1143 (2016)…………………..…………13,14

*OTO, L.L.C. v. Kho*, 8 Cal.5th 111 (2019)…………………………………………...18

*People v. Pennington,* 3 Cal.5th 786, 795 (2017)…………………………………….6

*Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 932 (9th Cir. 2004)….5, 8

*Stark v. Superior Court,* 52 Cal.4th 368 (2011)…………………………………………12

*Weiss v. City of Del Mar*, 39 Cal.App.5th 609, 618 (4th Dist. 2019)……………………6


<u>STATUTES AND REGULATIONS</u>

31 USC § 5311 et seq………………………………………………………………14

12 C.F.R. §21.11(4)(iii)…………………………………………………………..14, 17


<u>STATE CODES</u>

B & P Code § 5669…………………………………………………………………..11

Civil Code §1714.4……………………………………………………………passim

Education Code § 67361…………………………………………………………..11

Election Code § 2159.5…………………………………………………………12

Election Code §18108……………………………………………………………..12

Election Code § 18565…………………………………………………………11

Financial Code § 1880…………………………………………………………11

Food & Agriculture Code §16154………………………………………………11

Labor Code § 3366…………………………………………………………………12

Penal Code § 4533……………………………………………………………11

Penal Code § 4534…………………………………………………………………12

Public Utilities Code § 2107.5………………………………………………..11

Revenue & Tax Code § 19178…………………………………………………..11

Vehicle Code § 11700.3………………………………………………………11

Welf. & Inst. Code § 5610.30……………………………………………………passim

Welf. & Inst. Code §15610.27……………………………………………………12

Welf. & Inst. Code § 15630.1……………………………………...…………14

CACI Instructions

CACI 3100……………………………………………………………………….8

CACI User Guide, July 2022 Update………………………………….………8

## MEMORAMDUM OF POINTS AND AUTHORITIES

I. <u>BASED ON ESTABLISHED PRINCIPLES OF STATUTORY CONSTRUCTION, CALIFORNIA JUDICIAL COUNCIL APPROVED JURY INSTRUCTIONS, RELEVANT RULINGS BY CALIFORNIA SUPERIOR COURT JUDGES, AND LEGISLATIVE HISTORY OF THE ELDER FINANCIAL ABUSE STATUTE, WELF. & INST. CODE §15610.30 DOES NOT REQUIRE ACTUAL KNOWLEDGE OF THE UNDERLYING FINANCIAL FRAUD IN ORDER TO ESTABLISH LIABILITY.</u>

### A. <u>The 2009 Amendment to the Elder Financial Abuse Statute.</u>

Effective January 1, 2009, the California legislature amended Welf. & Inst. Code § 5610.30 (hereafter "the statute") to provide that an entity must be "deemed" to be a taker of the property within the meaning of the statute "if the person knew or should have known that this conduct is likely to be harmful to the elder or dependent adult."

Established principles of statutory construction, California Judicial Council approved jury instructions, relevant rulings by California superior court judges, and legislative history of the elder financial abuse statute, provide a reasonable interpretation of the 2009 amendment.  A federal court is limited to reasonable and readily apparent interpretations of a state statute.  See *Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 932 (9th Cir. 2004).

### 1. <u>The Purpose of the Elder Financial Abuse Statute.</u>

The general purpose of the elder financial abuse statute is to provide enhanced remedies to elders who have been victims of financial abuse, in order to encourage private, civil enforcement of laws against elder financial abuse. See *Bounds v. Superior Court*, 229 Cal.App.4th 468, 478 (2014).  The Ninth Circuit recognizes that all statutes must be

interpreted according to their purpose.  See *Weiss v. City of Del Mar*, 39 Cal.App.5th 609, 618 (4th Dist. 2019) (citing *People v. Pennington*, 3 Cal.5th 786, 795 (2017).

### 2.  <u>Established Principles of Statutory Interpretation</u>.

In interpreting the effect of the amendment to the statute, this Court must first determine whether the words of the statute have a plain meaning, or whether they create an ambiguity.  See *Gutierrez v. Carmax Auto Superstores California*, 19 Cal.App.5th 1234 (2018).  If there is an ambiguity, the court must adopt the interpretation that best fulfills the legislative purpose.  In determining the purpose of the amendment "…the court may consider a variety of extrinsic sources" such as legislative intent.  *Id.* at 1250.

On February 1, 2023, California Senator Bill Dodd issued a press release announcing the introduction of SB 278, intended to clarify existing ambiguities in the statute.  Specifically, Senator Dodd noted the existing ambiguity that results in large financial institutions escaping liability for assisting in elder abuse fraud.  The bill "…would clarify that victims of financial elder abuse can continue to hold institutions accountable when they should have known of the fraud but negligently assisted in the transfer anyway."  See Exhibit 1, February 1, 2023 Press Release by the office of Senator Bill Dodd.

"Financial elder abuse cases are on the rise in California. The breadth of predatory practices is staggering, with victims coming from all socioeconomic backgrounds."  Large financial institutions are "… are uniquely positioned to detect financial abuse and take action. Unfortunately, the language of California's current financial elder abuse law is unclear, leading to conflicting court rulings regarding the standard of proof for holding

accountable a financial institution."  See Exhibit 1.  This court should clarify the ambiguity in the statute by fulfilling its purpose to increase protection for victims of financial elder abuse.

Prior to the 2009 Amendment to the statute, subd. (b) provided that:

> a person or entity shall be deemed to have taken, secreted, appropriated or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates or retains possession of property **in bad faith** (emphasis added).

The 2009 Amendment increased liability for financial elder abuse on entities such as defendant CHASE for "obtaining" property, eliminated the need for the taker to "possess" the property taken, and the requirement of "bad faith" on the part of the taker, and provided that in lieu of bad faith, the taker would be liable for elder financial abuse if it **"knew or should have known that [its] conduct is likely to be harmful to the elder or dependent adult."** See Exhibit 2 at page 6-7.

The amended statutory language is clear that the "knew or should have known standard" applies to the taker of the property.  The applicability of the amended standard of taker liability to those who assist the taker, is ambiguous.  Applying the "should have known" standard to those who assist the taker, is consistent with the amended statute's purpose, "to enhance remedies to elders who have been victims of elder financial abuse." See *Bounds v. Superior Court*, 229 Cal.App.4th 468, 478 (2014).

//

//

//

3. **California Judicial Council Approved Jury Instructions And Relevant Rulings By California Superior Court Judges.**

    a. **CACI 3100**

CACI 3100 instructs the jury on the elements of a claim for assisting elder financial abuse under California Welf. & Inst. Code §15610.30.  This instruction constitutes an accurate statement of existing state law given to jurors by the presiding judge in elder financial abuse cases.  See CACI User Guide, July 2022 Update.  CACI instruction number 3100 does not require jurors to find liability for assisting in elder financial abuse only if the assisting entity has actual knowledge of the underlying fraudulent taking.  On the contrary, the instruction states that liability exists for assisting in elder financial abuse if the "(1) The defendant assisted in taking/hiding/appropriating/obtaining plaintiff's property; (2) that plaintiff was 65 years of age or older at the time of the conduct; (3) the defendant assisted in taking/hiding/appropriating/obtaining plaintiff's property for a wrongful use; (4) that plaintiff was harmed; and (5) that defendant's conduct was a substantial factor in causing plaintiff's harm."  Since a trial in state court based on the 2009 Amendment of §15610.30 does not require actual knowledge in order to establish liability for assisting in a violation of the statute, the requirement of actual knowledge in a federal trial for violation of the same offense would provide less protection to elders, contrary to the statute's purpose. Such a result would be based on an unreasonable federal interpretation of state law.  See *Planned Parenthood of Idaho, Inc. v. Wasden,* 376 F.3d 908, 932 (9th Cir. 2004).

    b. **Relevant Rulings by Superior Court Judges.**

California State Superior Court judges have overruled demurrers by defendant banks who claim that actual knowledge of the underlying fraud is a prerequisite for establishing

liability for assisting in elder financial abuse.  See Exhibit 3A, a copy of the Superior Court of the County of San Francisco's Order in *Don Donfray v. Wells Fargo Bank, et al*., case no. CGC-20-583893, dated July 1, 2020; Exhibit 3B a copy of the Superior Court of the County of San Francisco's Order in *Rosemarie G. Smith v. Bank of America, National Association, et al.,* case no. CGC-16-552080, dated October 4, 2016; Exhibit 3C a copy of the Superior Court of the County of San Francisco's Order in *Chan-Hie Kim et al. v. Wells Fargo et al*., case no. CGC-21-592111, dated February 18, 2022.

### 4.  *Das v. Bank of America, N.A.*, 186 Cal.App.4th 727 (2010) and *Bortz v. JPMorgan Chase Bank, N.A.*, 2021 WL 4819575 (S.D. Ca. Oct. 15, 2021) are Unreliable Precedent

*Das v. Bank of America, N.A.,* 186 Cal.App.4th 727 (2010) (hereafter "*Das*") relied upon by Defendant and blindly followed by many district court cases, is unhelpful in determining whether actual knowledge of the underlying fraud is required to violate the statute after the 2009 amendment.  *Das* dealt with a controversy occurring in June 2008 and interpreted the statute as it existed at that time.

Defendants rely heavily on *Bortz v. JPMorgan Chase Bank, N.A.*, 2021 WL 4819575 (S.D. Ca. Oct. 15, 2021) *("Bortz")* in support of their argument regarding actual knowledge.  *Bortz* is currently on appeal before the Ninth Circuit.  Plaintiffs/Appellants Opening Brief was filed on January 13, 2023.  (See Exhibit 4).  An Amicus Curiae Brief on behalf of the Institute on Aging was also filed.  Additional Amicus Curiae Briefs on behalf of California Advocates for Nursing Home Reform and Legal Aid Association of California are pending.  (See Exhibit 5).  The Ninth Circuit will likely determine whether actual knowledge of the underlying fraud is a prerequisite to a violation of §15610.30.

### a.  **Aiding and Abetting**.

It is noteworthy that the legislature uses the word "assists" rather than aids and abets the taker.  The legislature knows the difference between the meanings of aid and abet, which requires actual knowledge of an underlying crime or wrong, and assist, which does not.  See B & P Code § 5669 ("The fact that the holder of a license has aided or abetted in the practice of landscape architecture"); Education Code § 67361 ("No person shall aid and abet any act described in this subdivision."); Election Code § 18565 ("Any person who aids or abets in the commission of . . ."); Financial Code § 1880 (". . . every person who with like intent aids or abets any . . ."); Food & Agriculture Code § 16154 ("It is unlawful for any person to violate, or to aid, abet, authorize, or instigate . . ."); Penal Code § 4533 ("Every keeper of a prison . . . who fraudulently contrives, procures, aids, connives at, or voluntarily permits . . ."); Vehicle Code § 11700.3 ("No person may aid and abet a person in the performance of any act in violation of this chapter"); Public Utilities Code § 2107.5 ("When the commission finds, after hearing, that any person or corporation has knowingly aided or abetted a common carrier in violating"); Revenue & Tax Code § 19178 ("A penalty shall be imposed for aiding and abetting understatement of tax liability")).

### b.  **Assist**.

When the legislature uses the word "assist" alone, the statute does not require actual knowledge, specific intent, or other state of mind, unless the statute also uses additional term such as "willfully" or "knowingly" to modify the term "assist."  See Civil Code §1714.4 (any person or business entity "that knowingly assists a child support obligor who has an unpaid child support obligation to escape, evade, or avoid paying court-ordered or

court-approved child support shall be liable for three times the value of the assistance provided . . . ."). See also *Stark v. Superior Court,* 52 Cal.4th 368 (2011) (willfulness requirement in a statute requires actual knowledge); Penal Code § 4534 (willfully assisting a revoked parole prisoner to escape). Cf Cal. Labor Code § 3366 (assisting public employee as part of posse comitatus is results in person assisting being an employee of agency); Cal. Elecs. Code § 2159.5, §18108 (duties of those who receive money to assist others to register to vote).

If the legislature understood and intended "assists" in the statute to require actual knowledge, it would have included the modifier "knowingly" or "willfully", as it did in Civil Code section 1714.4. Moreover, a judicial interpretation of the statute that requires actual knowledge of the underlying fraud increases the burden on the victim of the fraud contrary to the purpose of the financial abuse statute, in violation of principles of statutory interpretation.

## II.   CHASE BANK WAS NEGLIGENT IN FAILING TO MAKE A REASONABLE INQUIRY OF MRS. GRAY PRIOR TO AUTHORIZING AND PROCESSING THE WIRE TRANSFER REQUESTS.

California State Law and Federal Law provide special protection to elders, such as PLAINTIFFS, who were 81 years old at all times herein, against deceptive and predatory financial abuse. See Cal. Welf. & Inst. Code §15610.27.

### A. Summary of Relevant Facts.

On November 30th, 2020, MRS. GRAY went the CHASE BANK branch in Woodland Hills, and gave the first wire instructions, which had been received by her as the victim of an Amazon elder financial abuse scam. As part of the same scam, on

December 3rd MRS. GRAY went to another chase bank and requested a second wire transfer.  The amount necessary to authorize the wire transfers had been transferred by the Amazon scammers from MR. GRAY'S CHASE BANK savings account ending in #0855 into the GRAYS checking account ending in #2196, from which the wire transfers to Bangkok were made.  Neither Mr. or Mrs. GRAY had any knowledge of, nor did they consent to such transfers.  Additionally, these inter-account transfers were unique and unprecedented, and were reflected at the time of the transfers in electronic bank records easily available to CHASE.  On Friday, December 4th, when MRS. GRAY related some of the facts underlying her contacts with the Amazon scammers prior to requesting the wire transfers from CHASE, a bank employee immediately stated that this was an "elder scam." See Second Amended Complaint [Dkt. No. 37] at pp. 4-6.

**B.  <u>Applicable Legal Principles</u>.**

California statutory law establishes the general duty of each person to exercise, in his or her activities, reasonable care for the safety of others. See Cal. Civ. Code, § 1714(a)). Unless there is a statutory exception to this general rule of negligence, courts can only create one if the exception is clearly supported by public policy.  See *Kesner v. Superior Court,* 1 Cal.5th 1132 at 1143 (2016) (hereafter *"Kesner"*).

Contrary to §1714(a) and its interpretation in *Kesner,* CHASE points to no statutory exception to a duty of care to protect elders like plaintiffs from financial abuse.  Rather, CHASE argues that courts have ruled that "a bank providing ordinary services owes no duty to supervise, inquire into the purpose [of a depositor's funds transfer], or investigate alleged fraud."  See Motion to Dismiss Second Amended Complaint [Dkt. No. 41] at

18:24-25.  Since CHASE points to no relevant statutory exception to the duty of care to protect elders from financial abuse, CHASE's argument can only succeed if it is based on a public policy exception.  The factors established by *Kesner* to determine a public policy exception mandate that Court reject CHASE's argument.  Indeed, the only clear public policy at play here is the California Elder Financial Abuse protections contained in Welf. & Inst. Code §15610.30.

The application of Section 1714(a) to the facts of this case is supported by a consideration of the factors enumerated by the California Supreme Court in *Kesner*.  According to *Kesner*, courts must consider the following 8 factors:

(1)    The foreseeability of harm to the plaintiff.  If the financial institution is negligent with respect to determining whether the decision to approve and process a requested wire transfer by a depositor, the foreseeability of harm to the depositor is evident.

(2)    The degree of certainty that the plaintiff suffered injury.  There is no dispute that PLAINTIFFS were deprived of $69,550 as a result of CHASE's negligence.

(3)    The closeness of the connection between the defendant's conduct and the injury suffered.  But for the defendant's negligent conduct, the Amazon scheme could not have been successful.  The scammers knowledge and use of bank account electronic transfer procedures was essential to the success of the scheme.

(4)    The moral blame attached to the defendant's conduct.  CHASE had knowledge of the increased vulnerability of elders, such as PLAINTIFFS, to become prey to wire fraud schemes and banks. The increased vulnerability of elders to wire fraud schemes and their bank accounts and in financial institutions was common knowledge in

-14-

the banking industry during the times alleged in the complaint.  The FBI publishes its elder fraud statistics on an annual basis And the American Bankers Association publishes its Benchmarking Report on Elder Abuse every other year.  The CHASE website touts awareness of the problem of elder financial abuse and the need for elders to protect themselves from elder financial abuse.  See Exhibit 7.

       (5)    <u>The policy of preventing future harm</u>.  The policy of protecting depositors and elders from bank fraud is evident from the state duty to report suspicious activities (Calif. Welf. & Inst. Code § 15630.1).  Financial institutions have a similar federal duty to report suspicious banking activities.  See 31 USC § 5311 et seq. and 12 C.F.R. §21.11(4)(iii).   In February of 2011, the U.S. Department of the Treasury's Financial Crimes Enforcement Network published an advisory that describes signs of elder financial exploitation that would trigger the filing of a "Suspicious Activity Report." The signs of abuse described in the advisory include: (i) erratic or unusual banking transactions, or changes in banking patterns; (ii) frequent large withdrawals; (iii) debit transactions that are inconsistent for the older adult; and (iv) uncharacteristic attempts to wire large sums of money. All four signs are present in this case.

       (6)    <u>The extent of the burden to the defendant</u>.  The additional burden imposed on a bank is minimal.  When a wire transfer is requested standard banking practices require the teller to examine the customer's account and to have that examination approved by a manager or by a supervisor to determine whether there are sufficient funds in the account to execute the wire transfer. This is done by accessing the account summary, which reflects the balance in the account from which the wire transfer will be sent.  Here, the account summary would also show, on the same screen, the unusual or unique transfer of funds from Mr. GRAY's savings account to Mrs. GRAY's checking account, to ensure the funds

necessary to execute the wire transfer.  These available facts should have raised additional questions by the teller, such as: "Did you transfer $35,000 from Mr. GRAY's savings account into your checking account yesterday?"  Or, "Do you personally know the individual receiving the wire funds in Bangkok?"  Or, "Have you sent a wire transfer to Thailand before?" Each of these questions and answers would have lasted seconds, would have alerted Mrs. GRAY and CHASE to the scam, and would have prevented the scammers from executing the scam. In *Bortz,* Plaintiffs alleged that in the midst of multiple suspicious wire transfers by Mr. Bortz, CHASE employees' only detailed inquiry was about whether Plaintiffs wanted to become clients of CHASE's private banking service.  (See Exhibit 8). Apparently, CHASE does not consider it burdensome to question clients in the midst of suspicious wire transfers when the questions relate to increasing CHASE's profits.

(7)   <u>Consequences to the community of imposing a duty to exercise care with resulting liability for breach</u>.  Liability for breach would cause banks to increase the protection to elder depositors.  There would likely not be any increase costs in existing training or supervision of bank employees.  The minimal burden imposed on financial institutions is justified by the magnitude of elder financial abuse which increases on a yearly basis.

(8)   <u>The availability, cost, and prevalence of insurance for the risk involved</u>. Financial institutions already have risk management programs and insurance to cover their errors and omissions.  The cost would depend on the continuous increase in the amounts of money fraudulently taken by scammers through financial institutions.  These amounts are likely to decrease if these financial institutions accept their responsibilities to assist and protect California elders from these fraudulent predatory practices through the use of financial institutions.

An examination of these eight factors strongly favors the establishment of a duty of care by financial institutions to protect elders like plaintiffs from fraud.

### 1.  CHASE Has a State Statutory Duty Of Care To Elders Like Plaintiffs, To Protect Them From Elder Financial Abuse.

Plaintiffs are not alleging a cause of action arising from the failure to comply with the duty of financial institutions to report suspicious activity.  However, the state and federal duties to report have prerequisites that are relevant to the elements of negligence under Civ. Code §1714.  For example, under both the federal and state laws, the duty to report exists if the "bank knows, suspects, or has reason to suspect" that any transaction "has no business or apparent lawful purpose or is not the sort in which the particular customer would normally be expected to engage, and the institution knows of no reasonable explanation for the transaction **after examining the available facts, including the background and possible purpose of the transaction.**" See 12 C.F.R. §21.11(4)(iii) (emphasis added).  Each of these prerequisites is relevant to the duty of care by financial institutions to use reasonable means to protect elders from financial abuse.

### 2.  CHASE's Duty To Report Suspicious Activity Is Relevant To Its State Statutory Duty of Care.

CHASE contends that the duty to protect elders from financial abuse is inapplicable because the deposit agreement between a bank and its customer creates a more limited duty of care.  This contractual relationship based on the deposit agreement is inapplicable to Plaintiffs' negligence claim for several reasons.

//

//

### 3.  <u>The Agreement Is An Unenforceable Illusory And Adhesion Contract.</u>

CHASE bases its argument on the existence of a valid and enforceable deposit agreement.  However, this agreement is unenforceable against the GRAYS for several reasons.  See Exhibit 6, a copy of CHASE's deposit agreement, prepared entirely by CHASE.  Paragraph D, page 22 of the 25-page Agreement provides that:

> We may change the terms of this agreement,
> including fees and features of your account, at
> any time.   If any change would adversely affect
> you, we will notify you in advance.

The terms "adversely affect" are not defined in the Agreement and are subject to any interpretation based on the whims of CHASE.   The California Supreme Court has recognized that "…when a party to a contract retains the unfettered right to terminate or modify the agreement, the contract is deemed to be illusory."  See *Asmus v. Pacific Bell*, 23 Cal.4th 1(2000).

An illusory contract is enforceable only if the terms are subject to limitations such as fairness and reasonable notice. *Id.* at 16.  The deposit agreement also does not require that the terms be fair or reasonable, or that CHASE provide any consideration to the depositor for a change of terms.  Indeed, the unlimited additional terms which CHASE may impose have no contractual limits.  Under such circumstances, the illusory agreement cannot be enforced.  In addition, the contract is also unenforceable as an adhesion contract.  See *OTO, L.L.C. v. Kho*, 8 Cal.5th 111 at 143 (2019) (agreement that violates reasonable expectation of the plaintiff or is unduly oppressive or unconscionable, is unenforceable).

//

//

**4.   Mr. GRAY And Mrs. GRAY Never Assented To The Terms Of CHASE's Deposit Agreement**

Neither Mr. GRAY nor MRS. GRAY was ever shown the 25-page Deposit Agreement (Exhibit 6), prior to opening the savings account (ending in #0855).  It was not until February 4, 2022, that GRAYs received a copy of the Agreement, pursuant to Mrs. GRAY's request for documents from CHASE.

**III.   CONCLUSION**

For all the reasons stated above, CHASE's motion to dismiss the second amended complaint should be denied.

DATED: February 6, 2023         Respectfully submitted,

LAW OFFICES OF OVERLAND & OVERLAND

*/s/ Courtney Overland*

By:  COURTNEY OVERLAND
Attorneys for Plaintiffs
DOUGLAS G. GRAY
ARLENE GRAY

*/s/ Mark E. Overland*

By:  MARK OVERLAND
Attorneys for Plaintiffs
DOUGLAS G. GRAY
ARLENE GRAY

## **PROOF OF SERVICE**

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 100 Wilshire Blvd., Suite 700, Santa Monica, CA 90401.

On February 6, 2023, I caused to be served the within document(s) described as:

**PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**

Via the court's EM/ECF System on the interested parties in this action as stated below:

STROOCK & STROOCK & LAVAN LLP
ARJUN P. RAO (State Bar No. 265347)
RYAN S. NELSON (State Bar No. 335800)
2029 Century Park East, 18th Floor
Los Angeles, CA 90067-3086

Executed on 2/6/2023 at Santa Monica, California.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

*/s/ Courtney Overland*

 (signature)